IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARLA BRUESSARD, an individual, ) | Case No.: |
| Plaintiff, ) | |
| v. ) | Judge: |
| AT&T CORP., a New York corporation; ) | |
| Defendant. ) | Magistrate Judge: |

## VERIFIED COMPLAINT

NOW COMES the Plaintiff, KARLA BRUESSARD, by and through her attorney, for her Complaint against the Defendant, AT&T CORP, and in support thereof states and alleges as follows:

## NATURE OF THE ACTION

1. This is a federal-question action involving statutory claims under the 42 U.S.C. § 1981 of the Civil Rights Act of 1866 and common law and statutory claims under Illinois law (common law retaliatory discharge). BRUESSARD was subjected to various retaliatory actions and discharged in retaliation for reporting discrimination within AT&T CORP.

## PARTIES

2. Plaintiff, KARLA BRUESSARD ("BRUESSARD"), is an individual that resides in Illinois, and has been a said resident of Illinois at all times relevant to this action.

3. Defendant, AT&T CORP., a New York corporation, (hereinafter as "AT&T"). AT&T operates a chain of stores including the store located at 155 Golf Rd, Rolling Meadows, IL 60008 (the "Rolling Meadows store") which was where BRUESSARD was employed at all relevant times herein.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. §§ 1331.

5. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because BRUESSARD asserts claims that arise under the laws of the United States, namely, 42 U.S.C. § 1981 of the Civil Rights Act of 1866.

1

6. The Court has supplemental jurisdiction over BRUESSARD'S state-law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to BRUESSARD'S federal-question claims that they form part of the same case or controversy.

7. Venue is proper in this district pursuant to 28 U.S.C. 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

**FACTS**

8. BRUESSARD began working for AT&T in or around December 2016, as a sales representative at AT&T's Rolling Meadows store until she was terminated on or about January 28, 2018.

9. During that time, BRUESSARD was a dedicated employee that enjoyed the work she did, and she planned on staying with AT&T for the remainder of her career but for the termination of her employment.

10. However, BRUESSARD was treated differently by several of her co-workers for being African American, including the Manager and Assistant Managers at AT&T's Rolling Meadows store.

11. Luan (last name unknown) ("LUAN") (White), an Assistant Manager in AT&T's Rolling Meadows store, racially harassed BRUESSARD the most out of any of her coworkers.

12. LUAN would often comment on BRUESSARD's hair; for instance, saying her hair looked like a burnt palm tree. LUAN would then show BRUESSARD pictures of palm trees on fire.

13. Additionally, LUAN would often call BRUESSARD fat or say BRUESSARD's breasts were popping out of her shirt.

14. Unfortunately, things got worse when Edwin (last name unknown) ("EDWIN") (Hispanic male), another Assistant Manager in AT&T's Rolling Meadows store, started working at the same AT&T store as BRUESSARD.

15. Frequently, LUAN and EDWIN would team up and make fun of BRUESSARD calling her "Frederick Douglass," in reference to African-American abolitionist and statesman from the 1800's.

16. Another co-worker, ROLAND ARIAS (Hispanic male), a sales representative in AT&T's Rolling Meadows store, told BRUESSARD that her hair was unprofessional and that she needed to straighten it and "look less black."

17. The harassment affected BRUESSARD to the point where BRUESSARD began seeing a therapist.

18. As part of being a Sales Representative at AT&T's Rolling Meadows store, BRUESSARD was expected to give out her work phone number to customers.

19. On one occasion, a customer kept messaging BRUESSARD on a personal basis. BRUESSARD reported it to Paul Naverez ("NAVEREZ"), the store manager at the Rolling Meadows location. NAVEREZ advised BRUESSARD to tell the customer that he was texting a work phone and that he could not send personal messages, which BRUESSARD did.

20. Shortly after this incident, BRUESSARD was charging her phone at work when she received an unsolicited picture of a penis from said customer. NAVEREZ saw the text message and wrote BRUESSARD up, despite BRUESSARD having no control over what a customer decided to send her.

21. An investigation was conducted by AT&T; however, before a decision was made, BRUESSARD's phone was scrubbed by AT&T.

22. On or about January 20, 2018, an African American man, who appeared to BRUESSARD to be homeless (hereinafter referred to as the "homeless man") entered AT&T's Rolling Meadows store.

23. EDWIN was unhappy that the homeless man was in the store and stared him up and down and spoke rudely to him. However, BRUESSARD greeted the homeless man and allowed him to use a display phone to call his family as the homeless man appeared to be cold and confused, did not know where he was, and said he had no money with him.

24. EDWIN became angry that BRUESSARD decided to help the African American homeless man; and EDWIN subsequently decided to call the police on the homeless man.

25. Once the local police arrived, BRUESSARD intervened and explained that the homeless man was fine, but that he just needed to go to a homeless shelter to warm up and wait for his family.

26. After the incident, NAVEREZ pulled BRUESSARD into his office and told her: "I know how important the whole 'black people thing' is [to you]… but when your manager makes a decision, you need to back him up," referring to EDWIN calling the police on the African American homeless man and indicating that BRUESSARD should not have helped the homeless man out and should have allowed the police to take the homeless man away since that was what EDWIN wanted to happen.

27. In response to NAVEREZ's "whole 'black people thing'" comment, BRUESSARD responded something to the effect of "yes, I am a person, and it is important to me," and defended her decision to treat the African American homeless man with compassion and respect, as well as brought up how the other employees at the store had been treating her and calling her names.

28. A week later, on or about January 28, 2018, BRUESSARD's employment was terminated.

29. The reason communicated to BRUESSARD regarding why her employment was terminated was due to BRUESSARD allegedly not selling enough DirecTV units for the year. However, BRUESSARD had won "Success Story" awards from AT&T for her sales throughout the

4

previous months. *See* Success Story Awards, marked as Exhibit A, attached hereto and made a part hereof.

30. BRUESSARD has subsequently learned that in the week or so between the homeless man incident and her termination, AT&T filmed a commercial in the AT&T Rolling Meadows location and purposely did not invite BRUESSARD to be a part of the commercial, even though she was still employed in the store at the time.

31. As a result of her termination, BRUESSARD suffered emotional and economic harm. Furthermore, BRUESSARD had to stop going to her therapist as she lost her insurance from AT&T.

## COUNT I
## VIOLATION OF 42 U.S.C. § 1981 OF THE CIVIL RIGHTS ACT OF 1866
## DISCRIMINATION ON THE BASIS OF RACE

NOW COMES the Plaintiff, KARLA BRUESSARD, by and through her attorneys, for her Complaint against the Defendants, AT&T CORP., for a violation of 42 U.S.C. § 1981 ("§ 1981"), and in support thereof states and alleges as follows:

1-31. BRUESSARD restates and realleges paragraphs 1-31 as though fully set forth herein.

32. Section 1981 provides that "[a]ll persons...shall have the same right in every State and Territory to make and enforce contracts...as is enjoyed by white citizens." *Id.* § 1981(a).

33. The phrase "make and enforce contracts" means "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. § 1981(b).

34. Section 1981 applies to employment context and "[c]laims based on conduct that occurred after the formation of a contract, such as wrongful-termination claims," are possible under § 1981(b)." *Campbell v. Forest Pres. Dist.,* 752 F.3d 665, 668 (7th Cir. 2014); *Morgan v. SVT, LLC*, 724 F.3d 990 (7th Cir. 2013); *Morris v. Office Max, Inc.,* 89 F.3d 411 (7th Cir. 1996); *Okoro v. Cook County Health & Hosp. System*, 19-CV-06061, 2021 WL 2413152 (N.D. Ill. June 14, 2021) (J. Wood).

35. BRUESSARD is African-American and is therefore a member of a racial minority in the United States.

36. AT&T had the intent to discriminate against BRUESSARD on the basis of race when: (1) LUAN made fun of BRUESSARD's hair; (2) when LUAN and EDWIN called BRUESSARD "Frederick Douglass;" (3) when ARIAS told BRUESSARD that her hair was unprofessional and that she needed to straighten it and "look less black;" (4) excluding BRUESSARD from the AT&T commercial; and ultimately (5) when NAVEREZ admonished BRUESSARD for treating an African-American homeless man with compassion and respect (i.e., "I know how important the whole 'black people thing' is [to you]…") and then terminated her employment one week later.

37. These comments and actions by coworkers were humiliating, degrading, and demonstrate a significant negative alteration in the workplace.

38. The discrimination by AT&T concerned the employment of BRUESSARD, which is one of the activities enumerated in § 1981.

39. AT&T unlawfully discharges and otherwise discriminates against individuals with respect to their compensation, terms, conditions, or privileges of employment, based on such individual's race.

40. AT&T subjected BRUESSARD to an adverse action when it terminated her employment.

41. Furthermore, BRUESSARD has subsequently learned that in the week or so between the homeless man incident and her termination, AT&T filmed a commercial in the AT&T Rolling Meadows location and purposely did not invite BRUESSARD to be a part of the commercial, even though she was still employed in the store at the time.

42. The Defendants use a racially motivated decision-making process when analyzing employment matters such as terminations of their employees.

43. The Defendants stated reason for terminating BRUESSARD—that it was based on not enough sales —was a pretext for discrimination, as BRUESSARD had met her all her sales goals and had awards for sales about a month prior.

44. A four (4) year statute of limitations applies to Section 1981 claims regarding the performance and enjoyment of current contracts. *Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 992 (N.D. Ill. 2016)(J. Durkin).

45. BRUESSARD timely filed this Complaint within the four (4) year statute of limitations.

WHEREFORE, Plaintiff, KARLA BRUESSARD, respectfully requests that judgment be entered against Defendant, AT&T CORP., and that this Court award her the following relief:

- A. Back pay in an amount to be determined at trial;
- B. Compensatory and consequential damages, including for emotional distress;
- C. Punitive damages;
- D. Pre-judgment and post-judgment interest at the highest lawful rate;
- E. Attorneys' fees and costs of this action;
- F. Any such further relief as this Honorable Court finds reasonable.

## COUNT II
## COMMON LAW RETALIATORY DISCHARGE

NOW COMES the Plaintiff, KARLA BRUESSARD, by and through her attorneys, for her Complaint against the Defendants, AT&T CORP., for a violation of, for Retaliatory Discharge, and in support thereof states and alleges as follows:

1-45. BRUESSARD restates and realleges paragraphs 1-45 as though fully set forth herein.

46. The United States has a clearly mandated public policy in favor of permitting eligible employees of covered employers to report a claim regarding discrimination in the workplace.

47. BRUESSARD reported discrimination in the workplace on or about January 20, 2018 when she complained to NAVEREZ about how she was being treated by other employees in AT&T's Rolling Meadows store.

48. BRUESSARD'S termination was, no doubt, in retaliation for intervening and stopping EDWIN from discriminating against the African American homeless man customer.

49. Illinois has a clearly mandated public policy in favor of preventing discriminatory acts occurring in the workplace, which at all times herein applied to AT&T.

50. AT&T discharged BRUESSARD in retaliation for activities in support of the public policies in favor of reporting instances of discrimination within AT&T.

51. AT&T'S act of discharging BRUESSARD in retaliation for her activities violates the clearly mandated public policies in favor of reporting other AT&T employees' activities.

52. BRUESSARD has suffered a loss of income and significant emotional distress as a result of AT&T'S retaliatory acts.

WHEREFORE, Plaintiff, KARLA BRUESSARD, respectfully requests that judgment be entered against Defendant, AT&T CORP., and that this Court award him the following relief:

A. Back pay in an amount to be determined at trial;
B. Compensatory and consequential damages, including for emotional distress;
C. Punitive damages;
D. Pre-judgment and post-judgment interest at the highest lawful rate;
E. Attorneys' fees and costs of this action;
F. Any such further relief as this Honorable Court finds reasonable.

## JURY DEMAND

BRUESSARD requests a trial by jury on all counts of this Complaint.

                                                Respectfully submitted,
                                                KARLA BRUESSARD

By:   /s/ Matthew R. Custardo
        One of his Attorneys

CUSTARDO LAW, LLC
Matthew R. Custardo
2135 City Gate Lane, Suite 300
Naperville, IL 60563
Tel: 630-557-1451 | Fax: 630-557-8050
matt@custardolaw.com

## VERIFICATION

I, KARLA BRUESSARD, am the Plaintiff in this action. I have read the foregoing Verified Complaint and am familiar with its contents. I declare under penalty of perjury under the laws of the United States that all of the factual statements contained in the foregoing are true and accurate to the best of my belief and is based upon personal knowledge, except where expressly indicated otherwise.

Karla Bruessard (Jan 10, 2022 23:20 CST)

KARLA BRUESSARD

CUSTARDO LAW, LLC
Matthew R. Custardo (ARDC #: 06329579)
2135 City Gate Lane, Suite 300
Naperville, IL 60563
Tel: 630-557-1451 | Fax: 630-557-8050
matt@custardolaw.com

# EXHIBIT A

